## Jarvis *vs* Davis, &c.

PET. EQUITY.

### APPEAL FROM THE LOUISVILLE CHANCERY COURT.

Case 26.

1. The general doctrine is well established, that an absolute bill of sale of personal property, unless it be *"followed and accompanied"* by the possession of the purchaser, is void as to the creditors of the vendor.

2. The fact that the vendor and vendee both resided in the same family, will not change the operation of the rule, unless there be an actual visible change of the possession, and the vendee so hold the possession as to show that the delivery to him was not merely formal or colorable. *Breckinridge v. Anderson,* 3 *J. J. Marshall,* 714.

3. The fact that the vendor continued in the actual possession of the property, listed it, (slaves,) for taxation, and was the apparent owner when he became indebted, is calculated to repel the presumption of right arrising from the transfer of title by bill of sale.

Jarvis filed his petition in equity against Davis, his debtor, and Mrs. Bell, to attach some slaves in possession of the latter as the property of Davis.

The plaintiff alleged that he held a note on Davis for upwards of $500, which was due and unpaid, and that he had removed from this state. That Mrs. Bell, the mother-in-law of Davis, had in her possession some slaves which belonged to Davis, and which had been placed in her hands for the fraudulent purpose of preventing his creditors from collecting their debts,

JARVIS
vs.
DAVIS.

and that she was about to remove said slaves to Missouri, where Davis had gone.

The defendants denied that the slaves which were attached belonged to Davis, and contended that they were the property of Mrs. Bell, purchased by her from the co-defendant fairly for a full consideration.

The following facts appear from the testimony : Mrs. Bell had resided for many years with her son-in-law, Davis. She owned a negro woman which was sold by him, and appropriated the money to his own use. Afterwards, in October, 1849, in payment of his debt to her, he sold to her the negro woman in contest, and executed to her an absolute bill of sale for the slave. Since that time the woman has had three children.

At the time of the sale the slave was in the possession of the vendor, and continued in his possession from that time until his removal to Missouri in March, 1853—a few days before this action was commenced; he listed the slaves for taxation after the sale, paid the taxes, and in all other respects treated them as his own until some time in the year 1852, when an execution against him being in the hands of the sheriff, he disclaimed having any right or title to them. Mrs. Bell lived with Davis when the sale was made, and continued to reside with him until he started for Missouri, and then the slaves were left in her possession to take with her when she followed him, which she intended to do in a short time.

The petition was dismissed by the chancellor so far as it sought to subject the slaves, and plaintiff has appealed.

SPEED & WORTHINGTON, for appellant—

The facts proved in this case conclusively show that Davis, after the bill of sale, continued in possession of the slaves, and exercised acts of ownership over them, and listed them for taxation and paid their taxes until shortly before the commencement of this suit; and that there never was any open transfer of the posses-

sion of the slaves to Mrs. Bell, and such sale was fraud-
ulent. *Halbert v. Grant,* 4 *Monroe,* 584; *Waller v.
Cralle,* 8 *B. Monroe,* 11. To last point see *Gaines v.
Wiggs,* 9 *B. Monroe,* 282.

JARVIS
vs.
DAVIS.

The following authorities are referred to as having
a bearing upon the case. *Goldsbury v. May,* 1 *Litt.,*
256; *Laughlin v. Ferguson,* 1 *Dana,* 118.

The sale, as respects the rights of Jarvis, a creditor,
was clearly fraudulent, and the property subject to the
satisfaction of his debt.

JOHNSTON and LINDSEY, for appellee—

Argued, that the proof clearly showed that the ne-
groes were the property of Mrs. Bell, purchased for a
full consideration due to her before Jarvis' debt exist-
ed. She resided in Davis' family before he left for
Missouri, and allowed Davis the services of the negro
woman for boarding.

There is no law requiring bills of sale to be record-
ed. Davis having listed the slaves for taxation, could
not affect the right of Mrs. Bell. Davis made no
claims of ownership, nor did he make any claim to
them. Mrs. Bell done all she could do without remov-
ing from Davis' family, and taking the slaves with
her, to show to the world that she claimed them.
Fraud is denied and not proved.

Judge SIMPSON delivered the opinion of the court.

September 14.

This petition in equity was filed by Jarvis against
Davis and Mrs. Bell, to attach some slaves in the pos-
session of the latter, as the property of her co-defend-
ant.

The plaintiff alleged in his petition, that he held a
note upon the defendant, Davis, for upwards of $500,
which was due and unpaid; that said defendant had
removed from the state, and was absent therefrom;
that Mrs. Bell, his mother-in-law, had in her posses-
sion some slaves which belonged to her co-defendant,
and which had been placed in her hands by him for
the fraudulent purpose of preventing his creditors from

collecting their debts; and that she was about to re-move with said slaves to the state of Missouri, where her son-in-law had gone.

The defendants denied that the slaves which were attached belonged to Davis, and contended that they were the property of Mrs. Bell, purchased by her from her co-defendant fairly, and for a full considera-tion. The petition was dismissed by the chancellor, so far as it sought to subject the slaves to the pay-ment of the plaintiff's debt, and from that judgment he has appealed.

The following facts are established by the testimony in the cause: Mrs. Bell had resided for many years with her son-in-law, Davis. She owned a negro wo-man, which was sold by him, and the money arising from the sale he appropriated to his own use. He af-terwards, in October, 1849, in payment of this debt, sold to her the negro woman in contest, and executed to her an unconditional bill of sale for the slave. Since that time the woman has had three children. At the time of the sale the slave was in possession of Davis, the vendor, and continued in his possession from that time until he removed to the state of Missouri, in March, 1853, a few days before this action was commenced. He listed the slave for taxation after the sale, paid the taxes, and in all other respects treated her as his own, until sometime in the year 1852, when an execution against him, being in the hands of the sheriff, he dis-claimed having any right or title to her. Mrs. Bell lived with him when the sale was made, and continu-ed to reside with him until he started for Missouri, and then the slaves were left in her possession, to take with her when she followed him, which she intended to do in a short time.

The question that arises upon this state of facts is, whether the slaves are or *not* liable for the plaintiff's demand against the vendor? The debt was contracted in June, 1851, after the sale was made.

1. The gener-al doctrine is well establish-

The general doctrine is well established, that an absolute bill of sale of personal property, unless it be

*"followed* and *accompanied"* by the possession of the purchaser, is void as to the creditors of the vendor.

This general rule which, so far as it is applicable, is inflexible, has not been controverted in the argument, but it is contended that where the vendor and vendee reside together when the sale is made, that then the title passes to the vendee, and the possession, by legal construction, accompanies the title, and no other change of the possession is necessary except that which in such a case is produced by the operation of the law.

As between the parties themselves, where they reside together, the possession, when a sale is made, follows the title, and is presumed to be with the vendee; but this presumption may be repelled by proof that the vendor still remained in the possession of the property, and that no change of possession, either actual or constructive, was made or intended to be made by the parties.

But suppose this legal presumption not to be repelled, will the constructive delivery of the possession, produced by the transfer of the title, where no visible alteration in the actual possession accompanies the sale, relieve the purchase from the operation of the rule, and make it valid so far as the creditors of the vendor may be affected by it?

The doctrine of constructive fraud seems to be founded on two reasons—First, that the retention of the possession by the former owner, after an absolute sale of the property to another, being inconsistent with the terms of the sale, is a badge of fraud and collusion. Second, that as the possession of personal property is evidence of ownership, the vendor by remaining in the possession of it continues to be the ostensible proprietor, and is thereby permitted to enjoy a delusive credit, which is calculated to deceive and injure those persons with whom he may deal.

The last reason referred to seems to be the most important, and has led to those decisions in support of the rule, by which it has been held that a mere mo-

ed, that an absolute bill of sale of personal property, unless it be *"followed and accompanied"* by the possession of the purchaser, is void as to the creditors of the vendor.

2. The fact that the vendor and vendee both resided in the same family will not change the operation of the rule, unless there be an actual visible change of the possession, and the vendee so hold the possession as to show that the delivery to him was not merely formal or colorable. *Breckinridge v. Anderson,* 3 *J. J. Marshall,* 714.

mentary delivery of the possession to the vendee, who immediately it returns it to the vendor, is insufficient to take the sale out of the operation of the rule—*Goldsbury v. May*, 1 *Litt.*, 254. That there must be an actual visible change of the possession, and that the vendee, having acquired it under his purchase must have enjoyed it so as to show that the delivery to him was not merely formal or colorable, before he can safely transfer it to the vendor. *Breckinridge v. Anderson*, 3 *J. J. Marshall*, 714.

In the case of *Laughlin v. Ferguson, &c.*, 6 *Dana*, 111, there was a union of the constructive possession with the title of the vendee, but as the vendor retained the possession under a contract of hiring, the sale was held to be fraudulent.

Now, where the parties reside together, does not the reason of the rule require that there should be an actual visible change of the possession, such as might be understood and known in the neighborhood. The vendor having been the original owner of the property continues, notwithstanding the sale to a vendee who resides in his family, the ostensible owner of it unless such a change of possession be made as will apprize the public that it has been transferred to the vendee. The mischief is the same where no such change is effected, as it is where the vendee resides elsewhere. The public are liable to the same impositions. The vendor has the same delusive credit in both cases. And more opportunities and greater inducements for the perpetration of actual frauds are afforded, where the vendee resides in the family of the vendor than if he resided at some other place. In accordance with these views this court decided, in the case of *Waller v. Cralle*, that the condition of the parties at the time of the sale, the vendee residing with the vendor, did not take the case out of the operation of the rule, but that an actual change of possession was absolutely necessary to the validity of the sale so far as creditors were concerned, whenever the vendor was at the time of the sale in the posses-

sion of the property. That doctrine, upon reconsideration, we believe to be correct, and still adhere to it.

But in the present case, the legal presumption that the possession passed to the vendee by the transfer of the title, is fully repelled by the testimony, and it is clearly and conclusively established, that the vendor after the sale continued in the actual possession of the slaves, listed them for taxation, and treated them as his own, and was the apparent owner of them at the time he became indebted to the plaintiff. An attempt was made to prove that he was allowed to retain the possession of them, as a compensation for boarding his mother-in-law, but the proof of that fact would not relieve the sale from the operation of the rule which renders it fraudulent as to the creditors of the vendor—*Laughlin v. Ferguson, &c., supra*—Consequently the court should have subjected the slaves to the payment of the plaintiff's demand.

Wherefore, the judgment is reversed, and cause remanded for a judgment in conformity with this opinion.

3. The fact that the vendor continued in the actual possession of the property, listed it (slaves) for taxation, and was the apparent owner when he became indebted, is calculated to repel the presumption of right arising from the transfer of title by bill of sale.